DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | CASE NO. 1:06 CR 150 |
| Plaintiff, | ) ) | |
| | ) | <u>MEMORANDUM OPINION</u> |
| v. | ) | <u>ANALYZING THE SENTENCING</u> |
| | ) | <u>FACTORS SET FORTH IN 18 U.S.C.</u> |
| Damian Bradford, | ) | <u>SECTION 3553(a)</u> |
| | ) | |
| Defendant. | ) | |

<u>I. Introduction</u>

The defendant previously entered, pursuant to a written plea agreement, a plea of guilty to Count 1 charging a violation of 18 U.S.C. § 2261A – Interstate Stalking ending in homicide and to Count 2 charging a violation of 18 U.S.C. § 924 (c)(1)(A) – Use and Carry of a Firearm During the Commission of a Felony.

The total offense level after granting a reduction of three levels for acceptance of responsibility is 40 and the Criminal History of the defendant is V, calling for a sentence of life imprisonment.

The Court delayed the sentencing of the defendant, as the defendant had promised to cooperate in the prosecution of Donna Moonda, Case No. 1:06 CR 395. The indictment against Donna Moonda alleged that she had aided and abetted the defendant in the crimes of Interstate Stalking and Murder for Hire. The victim was Dr. Gulam Moonda, the husband of Donna Moonda. On Friday, July 6, 2007, a jury returned a verdict of guilty against Donna Moonda on all four charges contained in the indictment. Damian Bradford testified as a government witness

(1:06 CR 150)

in the prosecution of Donna Moonda.  Against that background, the government moved the Court to depart downward in the calculation of the advisory sentencing guidelines as to Damian Bradford.  Specifically, the government moved for a downward departure of nine levels for the interstate stalking and advocated a sentence totaling 210 months, 180 months for the interstate stalking and 30 months consecutive for the gun charge.

## II.  The Analysis Required by 18 U.S.C. § 3553(a)

**(a)  Factors to be considered in imposing a sentence.**

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider -

**(1)  The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The defendant's plea agreement set forth the factual basis supporting the guilty plea as follows:

> A.   On or about May 13, 2005, in the Northern District of Ohio, Eastern Division, DAMIAN BRADFORD aka "Kaos" did travel in interstate commerce from Pennsylvania to Ohio, with the intent to kill Dr. Gulam Moonda.  That is, the defendant followed a vehicle, which was initially driven by Dr. Moonda, and later by Donna Moonda, from Hermitage, Pennsylvania to a location on the Ohio Turnpike in Cuyahoga County, Ohio.  Both vehicles stopped along the road.  Dr. Moonda and Damian Bradford exited their respective vehicles.
>
> B.   In the course of and as a result of such travel, Damian Bradford placed Dr. Moonda in reasonable fear of death or serious bodily injury in that Damian Bradford brandished a firearm as he approached Dr. Moonda, ordered him back into his vehicle and demanded his money.  Dr. Moonda

(1:06 CR 150)

>handed his wallet to Bradford.  Bradford then put his
>firearm to the side of Dr. Moonda's face and fired a single
>shot.  Dr. Moonda died as a result of the gunshot wound.

The defendant's acceptance of responsibility is set forth in paragraph 22 of the presentence report as follows:

>"I met Donna at Gateway Rehab.  We became intimate.  She began
>to confide in me, about having her husband killed.  She promised
>to give me half, if I were to do it.  I agreed to do it.  She explained
>to me, when, where, and how.  I followed her instructions and
>followed and shot Dr. Moonda on the Ohio Turnpike."

The defendant is 26, having been born on July 7, 1981.  He has a high school degree and some college work.  He was the second of two children born to the marriage of Sharon and Kenneth Bradford.  He indicates that his parents are still married, but have been separated for 20 years; however, his mother reports that she and her ex-husband are now divorced.  The defendant's mother resides in Pittsburgh, Pennsylvania and is on Social Security Disability as she suffers from a bipolar disorder.  The defendant has an older brother who lives in West Virginia.

The defendant reports that when he was about five years of age, his mother left his father due to physical abuse and the defendant stayed with his mother and had no contact with his father from age five to age 17.  The defendant describes a rough childhood with his mother as she abused "crack" cocaine which required his removal from her care by a child welfare agency.  As a consequence, the defendant reports that he was placed in foster care, group homes, detention centers and psychiatric wards of hospitals.

(1:06 CR 150)

The defendant reports that while his mother was abusing cocaine, the household was torn apart and he was left to "run the streets". The defendant reports that his mother has been clean for the past five years and states the relationship is "fine now".

The defendant reports that he has never married and has no children. However, he reports a five year relationship with Charlene McFrazier (age 22) whom he considers to be his fiancé. Charlene McFrazier was indicted for perjury as a result of providing a false alibi for the defendant on the day of the Moonda homicide.

The defendant reports that he is taking Elavil for anti-depression in order to help him sleep. He reports suffering from a hernia, but has been told that his present place of confinement cannot address his health problem and that care for the health problem will await his placement and designation with the Bureau of Prisons.

The defendant has a history of drug abuse as he started using marijuana at age 13, and as is frequently customary, graduated to the use of powder cocaine from age 20 to 22 on an almost daily basis. The defendant also reports abusing steriods. The defendant concedes that he is a recovering alcoholic.

The defendant has a spotty employment record as set forth in paragraphs 77-82 of the presentence report and as follows:

The defendant did not report any employment between 2003 and his arrest in this case.

From 2002 until 2003, the defendant states he worked for CPS Delivery in Leetsdale, PA in shipping and receiving. He say he was earning $12 per hour when he relocated.

From 2001 to 2002, he was working for Ambridge Temporary Services in Ambridge, PA. He says he was earning $8 per hour.

(1:06 CR 150)

From 2000 to 2001, he was a laborer for Greggs Temporary Service in Cranberry, PA. He indicates he was earning $9 per hour.

From 1998 to 2000, he worked as a landscaper at Meadows Farms Nursery in Chantilly, VA.  He was earning $9 per hour when he relocated.

Other types of employment he has held include: working at 7-11 convenience stores, working in factories, working at Modern Glass, labor jobs and landscaping.

**(2)  The Need for the Sentence Imposed**

**(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

A planned homicide is one of the most serious crimes imaginable.  Absent the cooperation of the defendant in the subsequent prosecution of Donna Moonda, the wife of the victim, a life sentence would have been appropriate for the defendant's conduct.  The prosecution entered into a most favorable guilty plea agreement with the defendant in what developed to be a successful prosecution of the victim's wife of 15 years.  Murder for hire, for which the widow, Donna Moonda, stands convicted, is the type of crime that provides a justifiable consideration for the government to enter into the favorable plea agreement in this case.  Against that background, the government's decision to give the defendant the opportunity to escape a life sentence cannot be faulted.   It can be argued that a sentence of 210 months fails to provide just punishment, but on balance, the Court finds that the sentence promotes respect for the law and provides just punishment.

**(B)  to afford adequate deterrence to criminal conduct;**

In the final analysis, the combination of the sentence for the defendant and the subsequent conviction of the widow of the victim, Dr. Moonda, provides adequate deterrence to

5

(1:06 CR 150)

the type of criminal conduct featured by this case.  The successful prosecution of the defendant, and then the wife of the victim, should provide a basis for caution for any other spouses contemplating a murder for hire of a spouse.

### (C)  to protect the public from further crimes of the defendant;

The defendant will be in his forties when released from custody and subject to a long term of supervised release.  Whether the defendant will continue with his pattern of recidivism is difficult to predict.  The defendant is articulate.  Possibly, on release from prison, he will commit to a crime-free life.  In any event he will be a person of interest to law enforcement, given the enormous publicity that has accompanied his crime and the crime of Donna Moonda.

### (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

The defendant will have ample opportunity to increase his educational training and learn a productive trade with prison industries.  Additionally, at the appropriate time, the defendant should be provided assistance to address his dependence upon drugs and alcohol.

### CONCLUSION

For the reasons set forth herein, a sentence of 210 months with supervised release for a

(1:06 CR 150)

period of five years, and within the advisory guideline range after engaging in a downward departure for substantial assistance, is a sentence sufficient, but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a)(2).

  IT IS SO ORDERED.

 July 18, 2007             */s/ David D. Dowd, Jr.*
Date                   David D. Dowd, Jr.
                     U.S. District Judge